**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ARCA SAVUNMA SANAYİ TİCARET ANONİM ŞİRKETİ, a Turkish Corporation,

Plaintiff,

v.

HYPERION MUNITIONS, INC., INTERNATIONAL ARMS CORPORATION, and DANE THOMAS,

Defendants.

**COMPLAINT**

Case No.________________

Plaintiff ARCA SAVUNMA SANAYİ TİCARET ANONİM ŞİRKETİ ("ARCA"), a Turkish corporation, complains against HYPERION MUNITIONS, INC. ("Hyperion"), a Florida corporation, INTERNATIONAL ARMS CORPORATION ("IAC"), a Florida corporation, and DANE THOMAS ("Thomas"), a Florida resident (collectively, "Defendants"), for breach of contract under the United Nations Convention on Contracts for the International Sale of Goods and, in the alternative, under Florida law, and for unjust enrichment, as follows:

## NATURE OF THE ACTION

1. This action arises from the failure and refusal of Hyperion and IAC (together, the "Buyers") to pay for 38,904,000 rounds of small arms ammunition that ARCA manufactured in Türkiye and exported to the Buyers in three shipments between December 2023 and May 2025, and that the Buyers received, accepted, warehoused, and resold in the United States. Of the $8,314,200.00 invoiced for those goods, the Buyers have paid only $1,318,460.00. The Buyers owe ARCA not less than $6,995,740.00 in unpaid purchase price and not less than $7,453,676.00

USD plus ₺511,164.81 TRY in total, together with interest. Thomas, who owns and controls both Buyers, is liable to ARCA for the benefits he obtained from the goods, as set forth in Claim III.

2. Each of the parties' agreements is a contract for the sale of goods between parties whose places of business are in different Contracting States to the United Nations Convention on Contracts for the International Sale of Goods, Apr. 11, 1980, 1489 U.N.T.S. 3 (the "CISG"). Both the United States and the Republic of Türkiye are Contracting States, and the parties never agreed to exclude the application of the CISG. The CISG therefore governs ARCA's contract claims. In the alternative, and only to the extent the CISG is found not to govern any agreement or issue, ARCA's contract claims arise under Florida's Uniform Commercial Code, Chapter 672, Florida Statutes.

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff ARCA is a corporation organized and existing under the laws of the Republic of Türkiye with its principal place of business located at Kızılırmak Mahallesi 1450. Sokak NO:3/67, 06530 Çankaya, Ankara, Türkiye.

4. Defendant Hyperion Munitions, Inc. is a corporation registered and organized under the laws of the State of Florida with its principal place of business located at 8601 Somerset Drive, Largo, Florida 33773. Hyperion's owner, founder, and Chief Executive Officer is Defendant Dane Thomas. The company holds a federal firearms license from the Bureau of Alcohol, Tobacco, Firearms and Explosives which covers manufacturing firearms other than destructive devices. That license is signed by Defendant Thomas, who is listed as "licensee responsible person" and "president."

5. Defendant International Arms Corporation is a corporation registered and organized under the laws of the State of Florida with its principal place of business at 8601

Somerset Drive, Largo, Florida 33773, the same address as Hyperion. Dane Thomas is listed as the Director, President, Treasurer, and Secretary ("DPTS") of IAC. The company holds a federal firearms license from the Bureau of Alcohol, Tobacco, Firearms and Explosives which covers importing firearms other than destructive devices. That license is signed by Defendant Thomas, who is listed as "licensee/responsible person" and "president." IAC acted as the registered importer, buyer of record, and consignee for the ammunition shipments at issue in this action.

6. Defendant Dane Thomas is a Florida resident. He is the founder and Chief Executive Officer of Hyperion Munitions and the founder and President of International Arms Corporation.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because ARCA's claims arise under a treaty of the United States. The CISG is a self-executing treaty, ratified by the United States Senate, that creates a private right of action in federal court. This Court additionally and independently has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the action is between ARCA, a citizen of a foreign state, and Defendants, each of whom is a citizen of Florida. This Court has supplemental jurisdiction over ARCA's claims under Florida law pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy.

8. Pursuant to 28 U.S.C. § 1391, venue is proper in the Middle District of Florida, Tampa Division, because a substantial part of the events or omissions giving rise to the claims at issue occurred in the Middle District of Florida, and all Defendants reside and transact business in the Middle District of Florida. Specifically, the goods were delivered to, warehoused at, and sold from Hyperion's facility in Largo, Florida.

9. This Court has personal jurisdiction over all Defendants because they are domiciled in Florida, transact business in Florida, and performed many of the acts and omissions giving rise to Plaintiff's claims in the State of Florida.

## FACTUAL ALLEGATIONS

### A. The Parties and Their Relationship

10. ARCA is in the business of manufacturing and exporting ammunition. ARCA is a licensed manufacturer of ammunition operating in Türkiye.

11. Dane Thomas is the President and owner of both Hyperion and IAC and controls both companies, which operate from the same facility in Largo, Florida. At all relevant times, Thomas acted on behalf of, and as the authorized agent of, both Hyperion and IAC in negotiating and placing orders with ARCA, arranging the import and receipt of the goods, and communicating with ARCA regarding delivery and payment.

12. Hyperion is in the business of importing, manufacturing, warehousing, and distributing small arms ammunition to wholesale and retail markets in the United States.

13. IAC acted as the registered importer, buyer of record, and consignee for each shipment at issue. ARCA's commercial invoices, the Turkish customs declarations, and the bills of lading for each shipment identify IAC as the buyer or consignee. IAC received the goods on behalf of, and for delivery to, Hyperion at 8601 Somerset Drive, Largo, Florida 33773.

14. As noted above, Hyperion and IAC are referred to collectively as the "Buyers." Hyperion and IAC acted together, through Thomas, in ordering, importing, receiving, and reselling the goods. Each is a party to, and is bound by, the agreements described below. In the alternative, to the extent either Hyperion or IAC is found not to be a party to any agreement, the other is bound as buyer, and the non-party is liable as set forth in Claim III.

### B. The Parties' Agreements

15. The parties did business through a series of separate purchase agreements, one for each shipment. For each shipment, the Buyers, acting through Thomas, ordered a specified quantity of specified ammunition from ARCA at a specified price per round. ARCA accepted each order by manufacturing the ammunition, issuing a commercial invoice to IAC, and dispatching the goods to the United States. Each order identified the goods and fixed both the quantity and the price.

16. The parties reached and performed each agreement through oral communications, email, and messages exchanged in a WhatsApp group titled "ARCA-IAC AMMO EXPORT," in which Thomas participated. ARCA confirmed the terms of each agreement in writing through a commercial invoice issued to IAC stating the goods, quantity, unit price, and total price, and through the related customs and shipping documents. The Buyers received each commercial invoice and did not object to its terms.

17. The price for each shipment was the fixed per-round price stated in the parties' agreement and on ARCA's commercial invoice. The Buyers' obligation to pay that price was not conditioned on, and did not vary with, the price at which the Buyers resold the goods or the profit the Buyers realized on resale.

18. The Buyers intended to resell the goods in the United States and anticipated funding payment from those resales. The parties agreed that the Buyers would pay the full invoiced price for each shipment to ARCA's bank account in Türkiye, without deduction, as the goods were sold, and in no event later than 180 days after the shipment cleared Turkish customs (the "Payment Deadline"). The Payment Deadline applied whether or not the Buyers had resold the goods by that date.

19. The Buyers knew that the Payment Deadline reflected a requirement of Turkish foreign exchange law. Under Decree No. 32 on the Protection of the Value of Turkish Currency and related Communiqués, including Communiqué No. 2018-32/48, a Turkish exporter must repatriate its export proceeds to Türkiye and close each export through an Export Value Acceptance Certificate within 180 days of customs clearance, and is exposed to tax and foreign exchange penalties if it does not.

20. In the alternative, under Articles 58 and 59 of the CISG, to the extent any agreement did not fix a time for payment, the Buyers were obligated to pay the price when ARCA placed the goods at their disposal, and in any event no later than when the Buyers received the goods in Largo, Florida, without any need for a request or demand by ARCA.

21. Under the parties' agreements, risk of loss passed to the Buyers once the goods were shipped from Türkiye. ARCA arranged and paid for ocean freight to the Port of Savannah, Georgia, and paid the Turkish customs, export, and exporters' association charges for each shipment. The Buyers were responsible for United States import duties, excise taxes, and customs fees, and for transporting the goods from Savannah to Largo.

**C. Shipment 1**

22. On or about December 12, 2023, ARCA shipped its first shipment of ammunition to IAC pursuant to the parties' agreement (Customs Declaration No. 23351900EX00216965; Commercial Invoice No. IHR2023000000002, dated December 12, 2023). This shipment consisted of 10,500,000 rounds of 9x19mm FMJ 124 Grain ammunition at a unit price of $0.180 per round, for a total invoice amount of $1,890,000.00 USD ("Shipment 1").

23. In connection with Shipment 1, ARCA paid ocean freight of $365,336.00 USD and Turkish customs and exporters' association fees totaling ₺260,767.30 TRY.

24. The Buyers received and accepted Shipment 1 and resold the goods. ARCA later received a single partial payment of $1,318,460.00 USD toward Shipment 1, remitted on the Buyers' behalf through an entity identified as Hyperion Ammunition. No further payment has been made. $571,540.00 of the invoiced price for Shipment 1 remains unpaid, and ARCA's costs of $365,336.00 USD and ₺260,767.30 TRY for Shipment 1 remain unreimbursed, for a total balance of $936,876.00 USD plus ₺260,767.30 TRY. The Payment Deadline for Shipment 1 expired on June 9, 2024.

**D. Shipment 2**

25. Following Shipment 1, the Buyers, through Thomas, ordered a second shipment of 3,132,000 rounds of 9x19mm Pistol Cartridges at $0.175 per round and 3,060,000 rounds of 5.56x45mm M193 Ammunition at $0.320 per round, on the same terms as Shipment 1. On November 22, 2024, and December 18, 2024, before Shipment 2 was dispatched, ARCA confirmed in writing to Thomas, through the ARCA-IAC AMMO EXPORT WhatsApp group, that all invoice amounts must be paid in full to ARCA's Turkish bank accounts within 180 days of customs clearance, without deductions. Thomas acknowledged and accepted those terms before ARCA dispatched Shipment 2.

26. On or about January 15, 2025, ARCA shipped its second shipment of ammunition to IAC for delivery to Hyperion pursuant to the parties' agreement (Customs Declaration No. 25351900EX00006430; Commercial Invoice No. IHR2025000000006, dated January 15, 2025) ("Shipment 2"). Shipment 2 consisted of:

a. 3,132,000 rounds of 9x19mm Pistol Cartridges at $0.175 per round, totaling $548,100.00 USD; and
b. 3,060,000 rounds of 5.56x45mm M193 Ammunition at $0.320 per round, totaling $979,200.00 USD.

27. The total invoice amount for Shipment 2 was $1,527,300.00 USD. Shipment 2 was shipped on the vessel MUKADDES KALKAVAN from Aliaga, Türkiye, to Savannah, Georgia, consigned to IAC at 8601 Somerset Drive, Largo, Florida 33773.

28. In connection with Shipment 2, ARCA paid ocean freight of $92,600.00 USD and Turkish operational costs totaling ₺57,596.51 TRY.

29. On February 25, 2025, Thomas confirmed in writing through WhatsApp that "[c]ontainers have been offloaded from the vessel." On March 7, 2025, Thomas further confirmed in writing that "all containers have cleared customs and should be delivered in the next day." The Buyers took delivery of Shipment 2 at Hyperion's facility in Largo, Florida.

30. The Buyers have paid nothing for Shipment 2 and have not returned any of the goods. The entire invoiced price of $1,527,300.00 USD remains unpaid, and ARCA's costs of $92,600.00 USD and ₺57,596.51 TRY for Shipment 2 remain unreimbursed, for a total balance of $1,619,900.00 USD plus ₺57,596.51 TRY. The Payment Deadline for Shipment 2 expired on July 14, 2025.

**E. Shipment 3**

31. The Buyers, through Thomas, then ordered a third shipment of 16,092,000 rounds of 9x19mm Pistol Cartridges at $0.175 per round and 6,120,000 rounds of 5.56x45mm M193 Ammunition at $0.340 per round, on the same terms as Shipment 2, including the Payment Deadline.

32. On or about May 22, 2025, ARCA shipped its third shipment of ammunition to IAC for delivery to Hyperion pursuant to the parties' agreement (Customs Declaration No. 25351900EX00086592; Commercial Invoice No. IHR2025000000063, dated May 22, 2025) ("Shipment 3"). Shipment 3 consisted of:

a. 16,092,000 rounds of 9x19mm Pistol Cartridges at $0.175 per round, totaling $2,816,100.00 USD; and
b. 6,120,000 rounds of 5.56x45mm M193 Ammunition at $0.340 per round, totaling $2,080,800.00 USD.

33. The total invoice amount for Shipment 3 was $4,896,900.00 USD. Shipment 3 was shipped on the vessel NEVZAT KALKAVAN from Aliaga, Türkiye, to Savannah, Georgia, consigned to IAC at 8601 Somerset Drive, Largo, Florida 33773. The shipment arrived, was received by IAC, and was delivered to and warehoused by Hyperion.

34. In connection with Shipment 3, ARCA paid Turkish operational costs totaling ₺192,801.00 TRY. The Buyers have paid nothing for Shipment 3 and have not returned any of the goods. The entire invoiced price of $4,896,900.00 USD remains unpaid, and ARCA's costs of ₺192,801.00 TRY remain unreimbursed. The Payment Deadline for Shipment 3 expired on November 18, 2025.

**F. The Buyers Accepted and Resold the Goods but Have Not Paid for Them**

35. In total, across Shipments 1, 2, and 3, ARCA manufactured, exported, and delivered 38,904,000 rounds of ammunition to the Buyers, consisting of 29,724,000 rounds of 9x19mm ammunition and 9,180,000 rounds of 5.56x45mm M193 ammunition, for a total invoiced price of $8,314,200.00 USD. ARCA also paid $457,936.00 USD in ocean freight and ₺511,164.81 TRY in Turkish customs, export, and operational costs for those shipments.

36. The Buyers have made only one partial payment of $1,318,460.00 USD. As a result, $6,995,740.00 USD of the invoiced price remains unpaid, and ARCA's total outstanding balance, including unreimbursed costs, is $7,453,676.00 USD plus ₺511,164.81 TRY (or its U.S. dollar equivalent).

37. All three shipments were received in full and accepted by the Buyers. The Buyers took possession of the goods, warehoused them at Hyperion's facility in Largo, Florida, and resold them to third parties in the ordinary course of business.

38. The Buyers never rejected any shipment, never declared any agreement avoided, never notified ARCA of any lack of conformity in the goods, and never returned or offered to return any of the goods.

39. On December 12, 2025, Mark Schneider, who introduced Thomas to ARCA and was involved in the parties' dealings, confirmed that the goods had been physically received, that an initial portion had been delivered and sold to end users, including Sports South, a national wholesale distributor of shooting sports products, that the remainder was inventoried at Hyperion's warehouse in Largo, Florida, and that the vast majority of the ammunition had already been sold.

40. On December 12, 2025, ARCA gave the Buyers formal written notice that the Payment Deadline had lapsed and demanded payment.

41. ARCA again demanded payment in writing on March 19, 2026, and, through counsel, on October 6, 2026.

42. Despite accepting and reselling the goods and despite repeated demands, the Buyers have failed and refused to pay the balance owed to ARCA.

43. The Buyers' nonpayment has caused ARCA additional harm that the Buyers knew of and foresaw when they entered into the agreements. Because the Buyers failed to pay by the Payment Deadlines, ARCA has been unable to repatriate the export proceeds for any of the three shipments as Turkish law requires and has been exposed to tax and foreign exchange penalties. ARCA has also incurred costs to locate and trace the goods and to pursue payment.

44. ARCA has satisfied all conditions precedent to bringing this lawsuit.

## CLAIM I

### Breach of Contract Under the CISG, Against Hyperion and IAC

45. ARCA incorporates by reference paragraphs 1 through 44 as if set out in full.

46. The CISG governs the parties' agreements. Each agreement is a contract for the sale of goods between parties whose places of business are in different Contracting States. CISG art. 1(1)(a). The goods were purchased for resale, not for personal, family, or household use or for any other exempt purpose as outlined in Article 2 of the CISG. CISG art. 2(a). The parties never agreed, in writing or otherwise, to exclude the application of the CISG. CISG art. 6.

47. For each shipment, the Buyers made an offer that was sufficiently definite because it identified the goods and fixed the quantity and price. CISG art. 14(1). ARCA accepted each offer by statement and by conduct, including by manufacturing the goods, issuing its commercial invoice, and dispatching the goods. CISG art. 18(1), (3). A contract was concluded for each shipment. CISG art. 23.

48. Under the CISG, a contract of sale need not be concluded in or evidenced by writing, is not subject to any other requirement as to form, and may be proved by any means, including witnesses. CISG art. 11. The parties' agreements, including the price and Payment Deadline, are further evidenced by ARCA's commercial invoices, the customs and shipping documents, the parties' written communications, the parties' course of performance, and the Buyers' receipt, acceptance, and resale of the goods. CISG arts. 8(3), 9(1).

49. ARCA fully performed its obligations under each agreement by manufacturing and delivering conforming goods in the quantities ordered, totaling 38,904,000 rounds of ammunition across three shipments. CISG arts. 30, 31, 35. The Buyers took delivery of all of the goods. CISG art. 60.

50. The Buyers were obligated to pay the price for each shipment, CISG art. 53, on the date fixed by the agreement, without the need for any request or formality on ARCA's part, CISG art. 59. That date was the Payment Deadline for each shipment. In the alternative, the price for each shipment became due when ARCA placed the goods at the Buyers' disposal. CISG art. 58(1).

51. The Buyers have breached the agreements by, among other things: (a) failing to pay the price for the goods delivered by the Payment Deadline for each shipment, or at all; (b) failing to pay despite ARCA's repeated written demands; and (c) retaining and reselling the goods without paying for them.

52. The Buyers' failure to pay any part of the price for Shipments 2 and 3, and most of the price for Shipment 1, is a fundamental breach that has substantially deprived ARCA of what it was entitled to expect under the agreements. CISG art. 25.

53. ARCA is entitled to require the Buyers to pay the price, CISG arts. 61(1)(a), 62, and to recover damages, CISG arts. 61(1)(b), 74. ARCA's right to damages is not affected by its exercise of any other remedy. CISG art. 61(2). Because the Buyers retained and resold the goods, ARCA had no opportunity to resell them or otherwise mitigate its loss. CISG art. 77.

54. As a direct and foreseeable result of the Buyers' breaches, ARCA has suffered loss for which it is entitled to recover damages under CISG article 74, including: (a) the unpaid price of $6,995,740.00 USD; (b) the ocean freight, customs, export, and operational costs ARCA paid in performing the agreements, totaling $457,936.00 USD and ₺511,164.81 TRY; (c) penalties, charges, and losses ARCA has incurred or will incur under Turkish foreign exchange and tax law as a result of the Buyers' failure to pay by the Payment Deadlines; (d) ARCA's costs of locating and tracing the goods and pursuing payment; and (e) all other loss resulting from the Buyers' breaches, in a total amount not less than $7,453,676.00 USD plus ₺511,164.81 TRY, to be proven

at trial. The Buyers knew or ought to have known, when each agreement was concluded, that each of these losses was a possible consequence of their failure to pay.

55. ARCA is entitled to interest on the price and all other sums in arrears from the date each sum became due until paid. CISG art. 78. Because the CISG does not fix a rate, ARCA is entitled to prejudgment interest at the rate set by Florida law, Fla. Stat. §§ 55.03 and 687.01, from the Payment Deadline for each shipment (June 9, 2024, for Shipment 1; July 14, 2025, for Shipment 2; and November 18, 2025, for Shipment 3), or from such earlier date as the Court determines the price became due, and to post-judgment interest under 28 U.S.C. § 1961.

56. Hyperion and IAC are jointly and severally liable for the Buyers' breaches. In the alternative, whichever of Hyperion or IAC is determined to be the buyer under any agreement is liable for the breach of that agreement.

## CLAIM II

### BREACH OF CONTRACT UNDER FLORIDA'S UNIFORM COMMERCIAL CODE, IN THE ALTERNATIVE, AGAINST HYPERION AND IAC

57. ARCA incorporates by reference paragraphs 1 through 44 as if set out in full.

58. Claim II is pleaded in the alternative to Claim I under Federal Rule of Civil Procedure 8(d)(2) and (3), to the extent the Court determines that the CISG does not govern any of the parties' agreements or any issue in this action.

59. Each agreement is a contract for the sale of goods governed by Chapter 672, Florida Statutes. ARCA, Hyperion, and IAC are each merchants who deal in ammunition. Fla. Stat. § 672.104(1).

60. A contract for the sale of goods was formed for each shipment through the parties' communications and conduct, which recognize the existence of a contract. Fla. Stat. § 672.204(1). Each contract is enforceable because (a) ARCA sent the Buyers a written confirmation of each

contract in the form of its commercial invoice, which the Buyers received and to which they did not object within ten days, Fla. Stat. § 672.201(2); and (b) the Buyers received and accepted all of the goods, Fla. Stat. § 672.201(3)(c).

61. ARCA fully performed under each contract. The Buyers accepted all of the goods by taking possession of them, failing to make an effective rejection, and reselling them, which is inconsistent with ARCA's ownership. Fla. Stat. § 672.606(1). Having accepted the goods, the Buyers are obligated to pay for them at the contract rate. Fla. Stat. § 672.607(1).

62. The Buyers breached each contract by failing to pay the price when due, whether that date is the Payment Deadline or, in the alternative, the time and place at which the Buyers received the goods. Fla. Stat. § 672.310(1).

63. Because the Buyers accepted the goods and failed to pay the price as it became due, ARCA is entitled to recover the price of the goods, not less than $6,995,740.00 USD. Fla. Stat. § 672.709(1)(a).

64. ARCA is also entitled to recover its incidental damages, Fla. Stat. §§ 672.709(1), 672.710, including ARCA's unreimbursed costs of not less than $457,936.00 USD and ₺511,164.81 TRY, and all other damages proximately caused by the Buyers' breaches, including the losses described in paragraph 44, in an amount to be proven at trial.

65. ARCA is entitled to prejudgment interest on all liquidated sums from the date each became due at the statutory rate under Fla. Stat. §§ 55.03 and 687.01, and to post-judgment interest under 28 U.S.C. § 1961.

66. Hyperion and IAC are jointly and severally liable for these breaches. In the alternative, whichever of Hyperion or IAC is determined to be the buyer under any contract is liable for the breach of that contract.

## CLAIM III

### UNJUST ENRICHMENT, IN THE ALTERNATIVE, AGAINST ALL DEFENDANTS

67. ARCA incorporates by reference paragraphs 1 through 44 as if set out in full.

Claim III is pleaded in the alternative to Claims I and II under Federal Rule of Civil Procedure 8(d)(2) and (3), to the extent the Court determines that no enforceable express contract governs the parties' dealings, or that any Defendant is not a party to such a contract.

68. ARCA conferred a direct benefit on Defendants by manufacturing and delivering to them 38,904,000 rounds of ammunition, with a combined invoice and operational cost value of $8,772,136.00 USD plus ₺511,164.81 TRY. Defendants knew of and voluntarily accepted that benefit.

69. Defendants accepted, warehoused, and resold that ammunition, including to wholesale purchasers such as Sports South, and retained the proceeds. Any remainder was inventoried at Hyperion's warehouse in Largo, Florida. Thomas personally received and benefited from the goods and their proceeds. Thomas owns Hyperion and is the sole Director, President, Treasurer, and Secretary of IAC. Hyperion and IAC operate from the same facility at 8601 Somerset Drive, Largo, Florida, which, according to online public records, is titled to 8601 Somerset LLC, an entity for which Thomas serves as its registered agent and Manager. Upon information and belief, Thomas also holds an ownership interest in 8601 Somerset LLC. Thomas personally negotiated each order with ARCA, personally confirmed receipt of the goods, and personally directed their receipt, warehousing, and resale. The only payment ARCA received was routed, upon information and belief, through a third entity, Hyperion Ammunition, rather than from either Buyer's account. Upon information and belief, based on these facts, Thomas caused the proceeds of the resale of ARCA's goods to be paid to himself or to other entities he owns and

controls, rather than to ARCA, and thereby obtained the benefit of ARCA's goods without paying for them.

70. Defendants paid ARCA only $1,318,460.00 USD toward Shipment 1, and nothing toward Shipments 2 and 3, while receiving all three shipments without providing any other benefit, value, or compensation to ARCA.

71. Despite ARCA's demands, Defendants have refused to account for, pay for, or return the ammunition they accepted and sold. As a result, ARCA has also incurred additional costs to locate the ammunition, confirm it was sold, and demand payment.

72. It would be inequitable for Defendants to retain the benefit of $7,453,676.00 USD plus ₺511,164.81 TRY worth of ammunition and costs without paying for them. Equity therefore requires restitution of the benefits ARCA conferred on Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, ARCA respectfully requests that the Court enter judgment in its favor and grant the following relief:

(a) On Claim I, against Hyperion and IAC, jointly and severally, the unpaid price of the goods, in an amount not less than $6,995,740.00 USD, and all other damages recoverable under CISG article 74, including ARCA's unreimbursed costs of not less than $457,936.00 USD and ₺511,164.81 TRY (or its U.S. dollar equivalent) and all incidental and consequential losses, in an amount to be proven at trial;

(b) In the alternative, on Claim II, against Hyperion and IAC, jointly and severally, the price of the goods accepted, in an amount not less than $6,995,740.00 USD, and incidental and all other recoverable damages, including ARCA's unreimbursed

costs of not less than $457,936.00 USD and ₺511,164.81 TRY (or its U.S. dollar equivalent), in an amount to be proven at trial;

(c) In the alternative, on Claim III, against all Defendants, jointly and severally, restitution of all benefits ARCA conferred on them, in an amount not less than $7,453,676.00 USD plus ₺511,164.81 TRY (or its U.S. dollar equivalent);

(d) Prejudgment interest on all sums awarded from the date each became due, under CISG article 78 and at the statutory rate under Fla. Stat. §§ 55.03 and 687.01;

(e) Post-judgment interest at the statutory rate under 28 U.S.C. § 1961;

(f) Taxable costs; and

(g) Such other and further relief as the Court deems just and proper.

Dated: October 28, 2026

Respectfully submitted,

NIXON PEABODY LLP

By: *<u>/s/ Forrest L. Andrews</u>*
FORREST L. ANDREWS, ESQ.
Florida Bar No. 17782
**LYDECKER LLP**
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
Telephone: (305) 416-3180
fla@lydecker.com

Timothy D. Sini (*pro hac vice*)
275 Broadhollow Road, Suite 300
Melville, New York 11747
Telephone: (516) 832-7655
tsini@nixonpeabody.com

*Attorneys for Plaintiff ARCA Savunma Sanayi Ticaret Anonim Şirketi*